UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DION P. DAWSON,

        Petitioner,

                                    Case No. 10-cv-10027
v.                               HON. BERNARD A. FRIEDMAN

JEFFREY WOODS,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

**I.**     **Introduction**

This is a federal habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Dion P. Dawson ("petitioner") was convicted of first-degree murder, MICH. COMP. LAWS § 750.316, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. He was sentenced to life imprisonment without the possibility of parole, a concurrent term of six years four months to twelve and a half years imprisonment and a consecutive term of two years imprisonment.

In his pleadings, petitioner raises claims concerning actual innocence, the effectiveness of trial counsel, the denial of substitute counsel or, in the alternative, self-representation, the denial of a mistrial motion, prosecutorial misconduct, the admission of witness intimidation testimony, the non-production of a witness, the effectiveness of appellate counsel, the impartiality of the trial court, the use of perjured testimony in determining probable cause, the refusal to allow polygraph

evidence, the voluntariness of his police statements and cumulative error.  For the reasons set forth

below, the Court denies the petition for a writ of habeas corpus and a certificate of appealability.

II.     **Facts and Procedural History**

Petitioner's convictions arise from the August 2002 shooting death of 20-year-old Teshebia

Weatherspoon in Detroit, Michigan.  The Court adopts the summary of the trial testimony set forth

by defense counsel on direct appeal to the extent it is consistent with the record.  Those facts are as

follows.

Teshebia Weatherspoon died as the result of three gunshot wounds to the head. (TT,

3/18/2003, at 162-164; 168; 170, testimony of Dr. Paul Nora, a Fellow with the Wayne County

Medical Examiner's Office).  Weatherspoon lived in Flint, Michigan and had three children. Her

father, Willie Brown, last saw her about five days before her death.  Brown knew Weatherspoon had

a boyfriend named "Bob," but never met him (TT, 3/18/2003, at 155-157; 158).

The primary prosecution witness, Eddie Smith, testified that he had known petitioner for six

to seven years and knew him as "Deon" or "Dock Bob" (TT, 3/18/2003, at 179).  Smith was allowed

to testify over objection that he had trouble speaking due to the effects of gunshot wounds he

suffered after he appeared at the District Court to testify against petitioner.  Smith said he had been

told by an acquaintance not to testify, but that he went to court anyway and was subsequently shot

on November 10, 2002.  He thought he had been shot by one of petitioner's brothers, but no one was

charged in connection with the shooting (TT, 3/18/2003, at 171-173; 176; 177. 206; 207-208).

Smith said that he lived with his girlfriend, Katrina Slater, at 2667 E. Alexandrine in Detroit.

In the early morning hours of August 30, 2002, Slater told Smith that she heard a noise outside the

back of their residence.  Smith got a flashlight which he aimed out the kitchen window and then

2

proceeded outside.  He saw a 1985-1986 silver two-door Cutlass.  Smith inquired who was there and

petitioner replied "It's me" (TT, 3/18/2003, at 181-182; 198).  Smith explained that he carried and

used the flashlight even thought it was not needed, as there was a street light out back in the alley.

He testified that he had a large backyard and an alley that ran behind it (TT, 3/18/2003, at 181).

Smith told petitioner not to steal any car parts or license plates from the cars parked in his backyard.

Instead, petitioner walked to the rear steps and told Smith that he had a problem.  He had a girl in

the car that could cause trouble, and that he had been involved in a home invasion and that the

female was "in on it," and drugs and money had been taken (TT, 3/18/2003, at 182-183; 184; 186).

Smith said that petitioner told him he was going "to do her."  Smith asked what he meant, and

petitioner allegedly replied that he was going to kill her (TT, 3/18/2003, at 184-185). Smith told

petitioner to "quit playing," but petitioner "kept on," and told him that he was letting Smith know

that if he heard a shot it would be him (TT, 3/18/2003, at 185).  Smith testified that he then went

inside and locked the door.  He looked out the kitchen window and saw petitioner open the car door

and a female got out and walked to the rear of the car by the trunk.  When she got to the middle of

the trunk Smith said petitioner raised his arm and Smith saw one flash "inches" from the girl's head.

She then fell to the ground (TT, 3/18/2003, at 186; 187-188; 189; 201-202). Smith stated that right

after the girl fell the trunk opened, and a passenger got out of the Cutlass and picked-up the girls'

arms.  Petitioner picked up her legs and the body was put into the trunk whereupon the car drove off

(TT, 3/18/2003, at 190-191).

Smith said that he was scared and told Slater what he had seen.  They both then left their

house and went to a friend's residence nearby.  Smith returned about four hours later (TT,

3/18/2003, at 191; 204) and admitted that he did not call the police (TT, at 200-201).  On the

3

following afternoon the police arrived, arrested him and transported him downtown.  Initially, Smith

told the police he did not know anything about the shooting because he did not want to get involved.

The police kept him for about four or five hours, and told him that he could be charged with

accessory to murder.  He gave a statement that evening, but was not charged with a crime. (TT,

3/18/2003, at 205; 218).

Slater testified that she lived with Smith and that he was the father of her three children (TT,

3/18/2003, at 219-220).  She knew petitioner for about five or six years and had last seen him

approximately one week earlier in her backyard.  She had seen him driving in a silver two-door car

and in a tan four-door car (TT, at 229-230; 224).  Slater said that in the early morning hours of

August 30, 2002 she heard a car pull into the alley in the back of her home.  She told Smith and he

got a flashlight and went to the back door as Slater remained in the living room by the television

(TT, at 221).  She said she heard Smith open the door and then heard petitioner ask "who is it?" (TT,

at 221; 225).  Slater looked out the side window and saw a car parked in the alley.  She did not see

petitioner (TT, at 225; 230).  She said that she heard a gunshot and that Smith told her "he done blew

her damn head off" (TT, at 222; 223).  Slater admitted that she and Smith had smoked some cocaine

the night before (TT, at 228; 231).  Slater and Smith ran to a friend's house around the corner (TT,

at 223).

Police Officer Robert Lalone testified that on September 11, 2002 he was on patrol and was

directed to an area at Leland and Grandy streets to look for a possible suspect in the shooting.  He

had been informed that the suspect could be driving a tan four-door Oldsmobile.  The suspect's

name was "Bob" or "Deon" and would be either wearing braided hair or might have a shaved head

(TT, 3/18/2003, at 241-242). Officer Lalone said he saw a tan 1988 Oldsmobile proceeding on

Joseph Campau and then onto Leland.  Officer Lalone conducted a traffic stop whereupon the driver, petitioner, could not produce his license or registration (TT, at 243-244). Officer Lalone stated that petitioner's appearance matched the description of the perpetrator and that petitioner had close-cut hair, with some indication that he may previously have had braided rows (TT, 244).  Officer Lalone arrested petitioner for the traffic violations and brought him to the Seventh Precinct.   At this juncture, a Homicide detective was notified of petitioner's arrest (TT, at 244; 3/19/2003, at 21; 23).

Detective Kurtiss Staples testified that he was with the Homicide Section and that he interviewed petitioner on September 12, 2002 (TT, 3/18/2003, at 246). He read him his rights at about 11:00 PM, and spoke with him from 11:04PM until about 2:35 AM.  Thereafter, petitioner signed a written statement confessing to Weatherspoon's murder (TT, at 249; 252; 255).  Detective Staples denied that he threatened petitioner or that petitioner told him that he had been harassed by other officers.  He also denied that petitioner requested an attorney (TT, at 251; 253-254).  Petitioner admitted to, among other things, a robbery in Flint, and recalled driving Weatherspoon to Detroit along with a passenger named "Darnell."  Petitioner recalled that Weatherspoon was shot but did not remember how it happened.  He also stated that Weatherspoon's body had been moved from its original location.  Police evidence technician Donald Rem described two investigation scenes; a scene of the likely shooting in the alley behind Alexandrine Street, and a second scene about four blocks away in an alley behind Chene Street, where the victim's body was found (TT, 3/19/2003, at 11-13).  He said there was a street light in the alley behind Alexandrine Street, but he examined the scene during daylight (TT, at 16; 18).

Riphaela Allen testified that she was petitioner's girlfriend in August of 2002 and that petitioner was with her from about 12:30 AM until 11:00 AM on August 30, 2002 (TT, 3/19/2003,

at 60).  She stated that petitioner arrived at her house very intoxicated at about 12:30 AM and the two of them slept on the couch throughout the entire night (TT, at 63).  Allen knew petitioner frequented Flint, but did not know that he lived there with Weatherspoon (TT, at 73; 77).  Ms. Allen found out about the murder charge after petitioner was arrested and called her.  She did not provide any alibi information to the police or the prosecution although she spoke with defense counsel (TT, at 67-68; 69-70; 72-73; 76; 78).  She said that in August 2002 Mr. Dawson sported a braided-row hairstyle  and that he drove a silver two-door Cutlass (TT, at 73-74). When she next saw him, at the District Court preliminary examination, he had a different hairstyle (TT, at 74).

At trial, petitioner testified while shackled because the trial court ruled that he posed a security risk (TT, 3/19/2003, at 93-94).  On the previous day, during a discussion regarding whether petitioner should testify, petitioner assaulted his lawyer and shoved him in the presence of the jury. The trial court removed petitioner to a courthouse detention cell that was wired for sound so that he could follow the proceedings outside of the courtroom for the balance of the trial. (TT, 3/19/2003, at 79-80; 85).  The trial court denied petitioner's motion for a mistrial and defense counsel's motion to withdraw his representation (TT, 3/19/2003, at 82; 83).

Petitioner testified that he did not murder Weatherspoon (TT, 3/19/2003, at 98).  Petitioner claimed that he knew her and had some form of a relationship with her when they lived together in Flint (TT, at 99; 111).  On August 30, 2002 he drove Weatherspoon and Frederick Dixon to Detroit (TT, at 99).  Petitioner said he was dropped off at his girlfriend's house at about 11:30 PM to 12:30 AM and that he had been drinking (TT, at 99-100).  Dixon left with Weatherspoon in petitioner's Cutlass (TT, at 100). Petitioner claimed that he did not leave Allen's house until about 10:00 AM the next morning and the he was never at the crime scene (TT, at 100).

6

Petitioner recounted that the police arrested him on September 11, 2002 near Leland Street at 8:00 P.M.  He was transferred to the Homicide Section after being processed at a local precinct. (TT, at 101).  Petitioner stated that Detective Jimenez and others questioned him about Weatherspoon's murder.  Petitioner disclaimed any knowledge of the circumstances surrounding the killing.  During his interrogation, petitioner alleged that Detective Jimenez slapped him twice in the face.  In response, petitioner again told him that he did not know anything about the murder. The detective then allegedly pulled out his gun before replacing it in his holster and, instead, produced a knife.  At this juncture, petitioner asked Detective Jimenez why he was treating him so harshly.  The detective replied that he wanted petitioner to know what it feels like to be a victim (TT, at 102).  Petitioner was then removed to the interrogation room where he was continuously questioned until approximately 1:00 A.M..  Thereafter, he was returned to the precinct.

The next day, petitioner was  transported back to the Homicide Section where Detective Jimenez questioned him again.  Petitioner reiterated that he did not know anything about Weatherspoon's murder.  Later in the day, Detective Staples questioned petitioner regarding the killing and informed him of his Miranda rights (TT, at 103-104).  Petitioner testified that, at this time, he requested a lawyer and told Detective Staples that he would no longer speak to the police. Petitioner stated that he eventually became tired and was scared that Detective Staples would mistreat him.  He then answered some basic questions with respect to his residence and other personal matters.  After copying petitioner's statement, Detective Staples had petitioner sign it without reviewing it.  Petitioner stated that Detective Staples inserted inculpatory information into the statement without petitioner's knowledge (TT, at 105-106, 127, 130).

Frederick Dixon testified at the trial as well.  He attested that he knew petitioner by the name

7

of "Bob" although he did not know him well (TT, 3/20/2003, at 9; 32). On August 30, 2002 petitioner allegedly picked Dixon up in the Ann Arbor/Ypsilanti area and drove him to Flint. Dixon then drove petitioner's car from Flint to Detroit because petitioner was intoxicated. He recalled that Weatherspoon was sitting in the rear seat (TT, at 10-11). Upon arriving in Detroit, Dixon estimated that he drove petitioner to his girlfriends house between 11:45 PM to 12:00 AM (TT, at 11-12). Weatherspoon then directed Dixon to drive her to a residence on Alexandrine Street, which he believed to be a crack house (TT, at 12). She momentarily entered the house, briefly returned to the car and then went back into the house. Dixon drove away and continued on alone to a local casino (TT, at 14). Approximately two and a half hours later, Weatherspoon called Dixon on his cellphone and asked him to pick her up from the house on Alexandrine. Dixon averred that he could hear screaming and cursing in the background (TT, at 15-16). Dixon returned to the house and knocked on the door although no one responded. He then drove to his home in the Ann Arbor area and left petitioner's car with one of petitioner's friends (TT, at 17-18; 31). Dixon said that he had not previously known Weatherspoon and that he had no further contact with petitioner until they were both incarcerated in the Wayne County Jail (TT, at 34).

After the trial, petitioner appealed his conviction on the following grounds:

I.      The trial court's jury instructions undermined petitioner's credibility and bolstered the credibility of a key prosecution witness.

II.     The prosecution's failure to produce witness Ava Williams, and the trial court's subsequent determination that the prosecution exercised due diligence in ascertaining her whereabouts, constituted reversible error.

III.    The prosecution introduced highly inflammatory and improper character evidence.

IV.     The trial court improperly allowed the jury to hear evidence concerning the intimidation and shooting of a key prosecution witness.

Petitioner also raised the following claims in a pro se supplemental brief:

I.      The trial court abused its discretion when it denied his motion for a mistrial after he pushed defense counsel in the presence of the jury.

II.     The trial court violated petitioner's state and federal constitutional rights to confrontation and due process of law when it removed him from the trial proceedings in violation of MCL 768.3.

III.    The trial court violated petitioner's state and federal constitutional rights to a fair trial and effective assistance of counsel when it denied defense counsel's motion to withdraw.

IV.     Petitioner was denied his state and federal constitutional rights to a fair trial, due process, and effective assistance of counsel.

V.      The prosecution violated petitioner's state and federal constitutional right to a fair trial because it solicited perjured testimony and failed to correct any false testimony.

VI.     Petitioner received an unfair trial because the prosecution introduced evidence obtained in violation of the Fourth Amendment.

VII.    Petitioner received an unfair trial because the prosecution introduced his involuntary statement to police investigators.

Petitioner subsequently filed a motion amend his supplemental brief and a motion to remand to expand the record. The Michigan Court of Appeals denied both motions and ultimately upheld his conviction. *People v. Dawson*, No. 248650, 2005 WL 292201 (Mich. Ct. App. Feb. 8, 2005) (unpublished). The Court of Appeals later denied petitioner's motion for reconsideration and the Michigan Supreme Court denied leave to appeal. *People v. Dawson*, 474 Mich. 934 (2005).

Petitioner then filed a motion for relief from judgment in the trial court asserting that:

I.      Where his conviction was based on perjured testimony by arresting officers which provided the basis of finding probable cause, such conviction was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and that trial counsel was ineffective for failing to request discovery and present evidence of the perjured testimony.

9

II.     The trial court abused its discretion and deprived him of his state and federal constitutional rights to have compulsory process in obtaining witnesses in his favor, the opportunity to present a complete defense, and fundamental fairness in violation of due process when, after granting a pre-trial motion and issuing an order that he be administered a polygraph regarding the voluntariness of his confession, admitted the confession without first adhering to its prior ruling, applying a per se ban on polygraph evidence which violated the law of the case doctrine, Michigan law, and the admissibility standard set-forth by the U.S. Supreme Court in *Daubert*. Alternatively, he was deprived of the effective assistance of counsel for providing false advice to his client and failing to timely object to the trial court's ruling on the motion without first adhering to its initial ruling.

III.    He was denied the effective assistance of counsel on appeal where his appellate attorney failed to file a motion to remand after he misled both his client and the appeals court into believing he would file such motion, misadvised his client as it related to raising a specific issue, and failing to raise obvious and substantial issues on direct appeal. This claim is also "cause" for the failure to raise arguments I and II on direct appeal.

The trial court denied the motion, ruling that petitioner was not entitled to relief on the first claim under Michigan Court Rule 6.508(D)(2) because it had essentially been raised and decided against him on direct appeal and that he was not entitled to relief on the remaining claims under Michigan Court Rule 6.508(D)(3) because he failed to show actual prejudice arising from his failure to previously raise the issues. *People v. Dawson*, No. 03-000809-01 (Wayne Co. Cir. Ct. April 3, 2007) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for lack of merit. *People v. Dawson*, No. 278159 (Mich. Ct. App. Aug. 27, 2007) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Dawson*, 480 Mich. 958, 741 N.W.2d 381 (2007).

Petitioner filed a second motion for relief from judgment with the trial court asserting that

10

he was actually innocent based upon newly-discovered evidence, an affidavit from a man named Carlos Brown. The trial court denied the motion, ruling that there had been no retroactive change in the law or claim of new evidence sufficient to allow the filing of a second motion for relief from judgment under Michigan Court Rule 6.502(G). *People v. Dawson*, No. 03-00809-01 (Wayne Co. Cir. Ct. May 13, 2008) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Dawson*, No. 285814 (Mich. Ct. App. Oct. 23, 2008) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Dawson*, 485 Mich. 861, 771 N.W.2d 778 (2009).

Petitioner thereafter instituted this habeas action. He raises the following claims in his *pro se* petition:

I.     He is actually innocent and it would violate both the Eighth and Fourteenth Amendments to the United States Constitution to allow his convictions and continued incarceration to stand.

II.    He was deprived of his right to the effective assistance of counsel guaranteed by the United States Constitution when his trial attorney (A) failed to investigate, locate, interview and produce at trial exculpatory witness "Jerry" and res gestae witness Ava Williams; (B) failed to strike for cause or remove by peremptory a juror who expressed bias during voir dire; (C) failed to impeach prosecution witness Eddie Smith with prior inconsistent statements and testimony; (D) failed to cross-examine prosecution witness Eddie Smith on the critical issue of his destroying of physical evidence and his inconsistent description of the complainant; (E) failed to request discovery in the form of a squad cruiser's video tape which would have proved arresting officers perjured themselves in order to establish probable cause; (F) failed to do pre-trial investigation in order to uncover the identity of exculpatory witness Carlos Brown and produce him at trial; (G) failed to object to improper judicial comments; (H) failed to object to prosecutorial misconduct; (I) cumulative effect of counsel's errors.

11

III.    He was denied his federal constitutional rights to a fair trial, due process, and his Sixth Amendment right to counsel when the trial court refused to allow him to represent himself, refused to appoint substitute counsel, and denied counsel's motion to withdraw.

IV.    He was deprived of his constitutional right to a fair trial and due process when the trial court denied his motion for mistrial after he pushed down his lawyer in the presence of the jury.

V.    He was deprived of his federal constitutional rights to due process and a fair trial through misconduct of the prosecutor which consisted of highly inflammatory and improper character arguments.

VI.    He was denied his federal constitutional right to due process and fundamental fairness by the trial court's allowance of evidence that the key prosecution's witness had been warned not to testify and that he was subsequently shot and wounded, where there was no direct connection to petitioner (who was jailed at the time), was an abuse of discretion which contaminated the proceedings depriving him of a fair trial.

VII.    He was denied his federal constitutional rights to a fair trial, confrontation, and due process of law, through the non-production of endorsed witness Ava Williams, and the trial court's subsequent determination that due diligence had been exercised.

VIII.    He was denied due process and the effective assistance of counsel on appeal where his appellate attorney (A) failed to file a necessary motion remand/evidentiary hearing; (B) failed to raise a significant and obvious judicial misconduct issue.

IX.    He was denied his federal constitutional rights to due process of law and a fair trial based upon the state trial court's comments.

X.    His conviction was based on perjured testimony by the arresting officers which provided the basis of finding probable cause and said conviction was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Trial counsel was ineffective for failing to request discovery and presenting evidence of the perjured testimony, thus, petitioner was entitled to a *Franks* hearing.

XI.    The trial court abused its discretion and deprived him of his federal constitutional rights to have compulsory process in obtaining witnesses in his favor, the opportunity to present a complete defense, and fundamental fairness in violation of due process, when it granted a pre-trial motion/issuing

12

an order that Petitioner be administered a polygraph examination regarding the voluntariness of his confession, admitted said confession into evidence without first adhering to its prior ruling, applying a per se ban on polygraph evidence which violated the law of the case doctrine, Michigan law, and the admissibility standard as clearly established by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

XII.   He was denied his federal constitutional rights to due process of law and a fair trial through the introduction of his involuntary statement.

XIII.   The cumulative effect of the errors deprived him of a fair trial under the federal constitution.

Respondent filed an answer to the petition contending that it should be denied because the claims are not cognizable, lack merit, and/or are barred by procedural default. Petitioner filed a reply.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs this case because petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

13

arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535

U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme

Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

U.S. at 520-521 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes

a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010)

(quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

    The Supreme Court recently held that "a state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even

a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

(citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must

determine what arguments or theories supported or . . . could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.

*Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

IV.   **Analysis**

    A.   **Procedural Default**

As an initial matter, respondent contends that some of petitioner's claims are procedurally defaulted. Specifically, respondent asserts that certain claims are defaulted because petitioner failed to make proper objections at trial and the Michigan Court of Appeals relied upon that failure to deny relief on direct appeal. Furthermore, petitioner's other claims are defaulted because he failed to raise those claims on direct appeal and the Michigan courts denied relief on collateral review based upon Michigan Court Rule 6.508(D). On habeas review, federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [substantive] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural issues are complex and the substantive claims are more readily decided on the merits. Accordingly, the Court need not address the procedural default issues and shall proceed to the merits of petitioner's claims.

    B.   **Actual Innocence Claim**

Petitioner first asserts that he is entitled to habeas relief because he is actually innocent. In support of this claim, petitioner presents an affidavit from a man named Carlos Brown, dated

September 11, 2006, in which he claims that petitioner was not present when the shooting occurred. Petitioner also presents an affidavit from Carlos Brown, dated April 22, 2010, reaffirming his initial affidavit.

It is well-settled that claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* In *House v. Bell*, 547 U.S. 518 (2006), the United States Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the United States Court of Appeals for the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [petitioner] is not entitled to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844, 854–855 (6th Cir. 2007); *see also Sitto v. Lafler*, No. 06–2203, 2008 WL 2224862, *1 (6th Cir. May 28, 2008) (same). Consequently, petitioner's contention that he is actually innocent, and that he has newly-discovered evidence to prove his innocence, fails to state a claim upon which federal habeas relief can be

16

granted.

###### C.       Ineffective Assistance of Trial Counsel Claims

Petitioner next asserts that he received ineffective assistance of counsel. Petitioner details several instances where trial counsel was deficient, namely the investigation of potential exculpatory witnesses and evidence before trial, the jury voir dire, the cross-examination of witnesses during trial, and the failure to object to alleged instances of judicial and prosecutorial misconduct, as well as the cumulative effect of these perceived errors.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions constituted sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

17

would have been different." *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review because of the deference accorded to trial attorneys and the state appellate courts that review their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on these claims finding that petitioner failed to demonstrate that trial counsel was ineffective.  The court explained in relevant part:

> Defendant next alleges multiple commissions of error by defense counsel amounting to ineffective assistance of counsel. Whether considered individually or together, the ineffective assistance of counsel claims raised by defendant in his standard 11 appellate brief are wholly without merit.
>
> * * *
>
> Defendant first contends that defense counsel should have called "Jerry" as a witness to testify that defendant did not commit the shooting. A failure to call a witness who may have made a difference in the outcome of the trial can constitute ineffective assistance of counsel. *People v. Johnson*, 451 Mich 115; 545 NW2d 637 (1996). The "defendant has the burden of establishing the factual predicate for his claim," and "to the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record" that supports the claim. *People v. Hoag*, 460

18

Mich 1, 6; 594 NW2d 57 (1999). In this case, it is impossible to determine from the record whether counsel was ineffective for failing to call "Jerry" because defendant never states who "Jerry" is, and never provides sufficient documentary evidence specifying exactly what Jerry would have testified about.

Defendant next argues that defense counsel was ineffective in failing to conduct an investigation into a statement made by Ava Williams, to determine whether Williams might have been able to offer testimony to impeach Katrina Slater on the question whether Slater saw a body loaded into the trunk of a car after the shooting. We disagree. A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *People v. Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). However, the failure to interview witnesses alone does not establish inadequate preparation. *People v. Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990). Instead, the defendant must show that the failure resulted in counsel's ignorance of important evidence that would have substantially helped the defendant. *Id*. Additionally, the decision whether to call witnesses is presumed to be a matter of trial strategy, and to overcome the presumption of sound strategy, the defendant must show that counsel's failure to call a witness deprived him of a substantial defense. *People v. Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). "A substantial defense is one that might have made a difference in the outcome." *Kelly, supra* at 526.

The record does not support defendant's assertions. First, there is no evidence Williams could even be located, as the police made unsuccessful efforts to secure Williams' attendance at trial as a prosecution witness. In addition, even if Williams could have contradicted some portion of Slater's testimony, Slater also testified that she heard Smith talking to a person, whose voice she recognized as defendant's, and that shortly after Smith had talked with defendant she heard a gunshot and then Smith told her: "he done blown her damn head off." Thus, neither interviewing Williams nor calling Williams to testify as a witness would have contributed to a substantial, outcome-determinative defense.

Next, defendant argues defense counsel was ineffective for failing to have a biased juror removed during voir dire. We disagree. Counsel's decisions relating to the selection of jurors is generally a matter of trial strategy.   *People v. Johnson*, 245 Mich App 243, 259 (2001). The juror in question stated to the trial court that while it would be difficult for her to be fair to both sides since both her niece and nephew were incarcerated, she would make her best effort to be unbiased and the trial court accepted these assurances. Because the juror made and the trial court accepted these assurances, the record reveals no obvious cause for the juror's removal. Thus, defendant has failed to show prejudice or to overcome the presumption that defense counsel's method of jury selection was sound trial strategy, and defendant was not denied effective assistance of counsel on this basis.

19

Defendant next argues that defense counsel's performance fell below an objective standard of reasonableness when he failed to properly cross-examine a key prosecution witness. We disagree. Defendant argues that in his statement to police, Eddie Smith never stated that he saw the victim's body loaded into the trunk by defendant. However, defendant considers only a part of Smith's statement to police to make this assertion. While Smith's trial testimony does reveal some inconsistency on this point, we conclude that additional cross-examination by trial counsel on the point would not have changed the outcome of the trial. Therefore, defendant has failed to demonstrate that defense counsel was ineffective.

Defendant also argues that defense counsel was ineffective for failing to properly cross-examine Smith about his "destruction of evidence" and "inaccurate description of the complainant." We disagree. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v. Davis* (On Reh), 250 Mich App 357, 368; 649 NW2d 94 (2002). First, defendant makes no citation to anything in the record indicating that Smith ever destroyed evidence relevant to this case. Second, defendant fails to articulate how impeaching Smith's description of Weatherspoon would have affected the outcome of his trial. Thus, defendant has failed to overcome the presumption accorded trial counsel on matters of trial strategy.

Next, defendant argues defense counsel erred by refusing to file a motion for new trial on his behalf. However, defendant's brief on appeal does not specify why, when, or the basis on which defense counsel should have moved for a new trial. A party may not merely announce his position or assert an error and leave it to the appellate court to discover and rationalize the basis for his claims or unravel and elaborate for him his arguments. *Wilson v. Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).

Defendant also claims that trial counsel did not meet with him enough times before trial, resulting in trial counsel's failure to produce witnesses essential to his defense. However, the only witness defendant indicates should have been called is Ava Williams, and we have already rejected defendant's claim of error regarding Williams' failure to testify at trial. We find no basis for concluding that defense counsel's preparation for trial fell below an objective standard of reasonableness...

*Dawson*, 2005 WL 292201 at *6-8.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner first asserts that trial counsel was ineffective for failing to investigate and produce witnesses – a man named "Jerry," Ava Williams, and Carlos

20

Brown.   Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary.  *See Wiggins*, 539 U.S. at 522-523; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence."  *Towns*, 395 F.3d 251 at 258.  "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them."  *Id*. (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)); *see also Wiggins*, 539 U.S. at 526.

That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy.  When making strategic decisions, counsel's conduct must be reasonable.  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-523.  The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

The record indicates that a man named Jerry initially told the police that someone other than petitioner shot the victim, but then reported that a man named "Bob" (a name by which petitioner was also known) who had braids or was bald committed the shooting.  Jerry also told police that his information came from people in the neighborhood, thereby implying that he did not personally witness the incident.  Given Jerry's conflicting statements and the potential hearsay involved, the Court finds that it was reasonable for counsel to forego interviewing Jerry or calling him as a

21

witness.

The record further establishes that defense counsel requested Ava Williams' presence at trial, but the authorities were unable to locate her despite their reasonable efforts. There is no indication that counsel could have located Williams on his own or done anything more to secure Williams' presence at trial. Petitioner has thus failed to establish that counsel was deficient because he failed to produce Williams.

Moreover, petitioner neither proffered an affidavit from Ava Williams nor otherwise demonstrated that she could have provided favorable testimony in aid of his defense. Although Williams told the police that Katrina Slater said she saw someone dump a body in a car trunk and Slater denied making such a statement at trial when cross-examined by defense counsel, there is no reason to believe that such a discrepancy would have affected the outcome at trial. Slater testified that she heard petitioner's voice and then a gunshot on the day of the shooting. However, Slater later admitted that she did not see petitioner or witness the shooting personally. As petitioner did not demonstrate that Williams' absence deprived him of a substantial defense, he failed to show that counsel was ineffective in this regard.

There is also no evidence that trial counsel knew or had reason to know that Carlos Brown had information relevant to the shooting or that he was willing to testify on petitioner's behalf. Brown did not sign his affidavit until 2006 and the affidavit indicates that he was angry with petitioner and not willing to come forward at the time of trial. In any event, counsel offered other witnesses in support of petitioner's defense and the Court finds that counsel's performance was reasonable under the circumstances of this case.

Petitioner also asserts that trial counsel was ineffective because he failed to strike a juror

who expressed bias during voir dire.  The juror at issue stated that she knew people who had been both victims and perpetrators of crimes.  The juror initially indicated that she honestly "didn't know" if she could be fair, yet, upon further questioning, agreed that she would "do her best."  The selection of jurors is a matter of trial strategy, which will generally not be second-guessed.  *See Miller v. Francis*, 269 F.3d 609, 615-616 (6th Cir. 2001) (stating that jury voir dire cannot serve as the basis of an ineffective assistance of counsel claim unless "counsel's decision is shown to be so ill-chosen that it permeates the entire trial with unfairness"); *see also Harris v. Konteh*, 198 F. App'x 448, 454-55 (6th Cir. 2006).  Given the juror's response that she would do her best to be fair, counsel may have reasonably determined that a challenge for cause would be unsuccessful and that a peremptory challenge was not worthwhile and should be saved for another juror.  Moreover, the juror's response in no way indicated a particular bias in favor of or against those accused of criminal conduct.

Petitioner further argues that trial counsel neglected to impeach prosecution witness Eddie Smith with prior inconsistent statements and did not cross-examine him regarding his destruction of physical evidence, his inability to describe the victim and his prior drug use.  The failure by trial counsel to cross-examine a prosecution witness may constitute ineffective assistance of counsel. *See, e.g., Hence v. Smith*, 37 F. Supp. 2d 970, 983 (E.D. Mich. 1999).  Nevertheless, "courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."  *Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002).

In this case, trial counsel adequately cross-examined Eddie Smith with respect to his recollection of the shooting and made reasonable efforts to challenge any inculpatory testimony.

23

Petitioner claims that counsel should have impeached Smith's trial testimony that he saw petitioner put the victim's body in the car trunk with a prior statement in which he claimed that he did not see petitioner do anything. The record, however, reveals that later in the same statement, Smith told the police that he saw petitioner put the victim's body in the trunk. Thus, given the potentially incriminating effect of Smith's statement, counsel may have reasonably decided that using it would not benefit the defense. The fact that counsel's decision ultimately proved unsuccessful does not mean that his representation was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Petitioner's claim that counsel failed to question Smith about the destruction of evidence similarly lacks merit because it is belied by the record. While police statements indicate that there were discussions about how to clean the area where the shooting occurred, there is no evidence that Eddie Smith, or anyone else for that matter, destroyed evidence. Petitioner has failed to show that counsel erred and/or that he was prejudiced by counsel's conduct. Additionally, petitioner's argument that Smith provided an inaccurate description of the victim, or that his inability to fully describe her affected his ability to then describe petitioner, is unavailing because he was more familiar with petitioner. Trial counsel may have reasonably determined that such an inquiry was unwarranted and would not benefit petitioner's defense.

Lastly, the record indicates that Katrina Slater testified that both she and Smith used cocaine several hours before the shooting. Counsel may have reasonably decided to rely on her testimony rather than delve into such matters with Smith. Further, the potential impeachment arising from Smith's response would have been limited because it occurred several hours before the shooting.

24

2:10-cv-10027-BAF-MKM   Doc # 19   Filed 10/05/12   Pg 25 of 49   Pg ID 2091

Petitioner also asserts that counsel did not request a copy of the police video documenting his arrest. Petitioner alleges that the video would have established that the arresting officers perjured themselves to establish probable cause. It is apparent from the record, however, that no such video exists.

Petitioner's claim that counsel was ineffective for failing to object to the claimed instances of judicial and prosecutorial misconduct is equally without merit. In light of this Court's determination that those underlying claims must be dismissed, *see* discussion *infra*, petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct in this regard.

Lastly, petitioner asserts that he was prejudiced by the cumulative effect of counsel's alleged errors. Given the Court's determination that counsel did not err and/or that any errors did not prejudice the defense, petitioner cannot establish that he is entitled to habeas relief on his claim of ineffective assistance of counsel.

### D.    Substitute Counsel Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred when it denied his request for substitute counsel or, in the alternative, self-representation and denied defense counsel's request to withdraw as counsel.

The record demonstrates that petitioner made a request for substitute counsel and self-representation on the first day of trial before jury selection, asserting that counsel did not sufficiently consult with him sufficiently and did not know what arguments to put forth at trial. Defense counsel responded that he met with petitioner three times at the jail and that he was prepared for trial. The trial court denied petitioner's request. In the midst of trial, petitioner again

expressed dissatisfaction with counsel, claiming that he was "in with the prosecutor" and that he was refusing to ask witnesses particular questions at petitioner's insistence. The trial court directed counsel to ask petitioner's prepared questions. Later in the trial, petitioner pushed counsel down in the presence of the jury. Counsel moved to withdraw, asserting a breakdown in communications. The trial court denied the request because petitioner created the potential for juror bias and substitution at such a late stage in the trial would impair the judicial process.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the assistance of counsel, *Powell v. Alabama*, 287 U.S. 45, 53 (1932), and gives an indigent criminal defendant the right to the assistance of court-appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). The right to counsel of one's choice is not absolute, *Wheat v. United States*, 486 U.S. 153, 159 (1988), and an indigent defendant does not have an absolute right to choose appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Consequently, a defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [counsel]." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

The Sixth Circuit has cited three factors to consider when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate

26

defense. *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*). These factors are balanced with the public's interest in the prompt and efficient administration of justice. *See Iles*, 806 F.2d at 1131, n. 8; *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

The Sixth Amendment also grants a criminal defendant the right to self-representation, if he voluntarily and intelligently elects to do so. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 153 (2000); *Faretta v. California*, 422 U.S. 806, 819 (1975). A waiver of the right to counsel must be voluntary, knowing and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Faretta*, 422 U.S. at 835; *Jones v. Jamrog*, 414 F.3d 585, 593 (6th Cir. 2005). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Tovar*, 541 U.S. at 92. Additionally, a criminal defendant who seeks to proceed *pro se* must generally be aware of the risks of self-representation so that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835.

Addressing petitioner's claim on direct appeal, the Michigan Court of Appeals stated:

Defendant next argues that during the trial, there was a substantial breakdown in the relationship between defendant and defense counsel such that the trial court committed error by not appointing defendant substitute counsel or allowing defendant to represent himself. We disagree. A trial court's decision affecting a defendant's right to counsel of choice, whether to appoint substitute counsel for a defendant, and whether to allow a defendant to represent himself at trial are all reviewed for an abuse of discretion. *People v. Akins*, 259 Mich App 545, 556-557; 675 NW2d 863 (2003). Appointment of substitute counsel is warranted only on good cause shown and where substitution of counsel will not unreasonably disrupt the judicial process. *People v. Jones*, 168 Mich App 191, 194; 423 NW2d 614 (1988). Good cause exists where a legitimate difference of opinion develops between defendant and appointed counsel regarding a fundamental trial tactic. *People v. Williams*, 386 Mich 565, 574; 194 NW2d 337 (1972).

27

> Here, defendant's concern that defense counsel was unprepared does not constitute a legitimate difference of opinion regarding a fundamental trial tactic. Moreover, defendant's loss of confidence in his attorney because of perceived inattentiveness is not good cause to substitute counsel. *People v. Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). The record further reflects that defendant waited until the day of trial to seek to replace his defense attorney or represent himself. Because he made alternative requests, defendant's request to represent himself was necessarily equivocal. A trial court does not err in denying an equivocal request for self-representation.  *People v. Dennany*, 445 Mich 412, 432, 439; 519 NW2d 128 (1994).

*Dawson*, 2005 WL 292201 at *6.

The Michigan Court of Appeals' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The trial court did not abuse its discretion nor did it violate petitioner's constitutional rights when the court denied petitioner's request for substitute counsel or, in the alternative, self-representation and denied counsel's request to withdraw.  Petitioner never expressed any dissatisfaction with defense counsel the first day of trial and his request is, therefore, untimely. *See Trujillo*, 376 F.3d at 606-607; *United States v. Wilhite*, 108 F. App'x 367, 369 (6th Cir. 2004).  Furthermore, the record does not reflect that counsel was unprepared for trial.  In regards to petitioner's mid-trial complaint about the questioning of witnesses, the trial court resolved the problem by instructing counsel to ask petitioner's questions and there was no foundation for petitioner's claim that counsel was "in with the prosecutor."  While counsel moved to withdraw his representation after petitioner assaulted him, it does not appear that petitioner's conduct prevented counsel from completing the trial and mounting an adequate defense.  In fact, trial counsel offered a spirited defense and presented witnesses, including petitioner, to support it.  Moreover, substitution of counsel at such a late stage in the proceedings would have been detrimental to the court proceedings and the parties.  Petitioner has, thus, failed to establish that the trial court erred when it denied his request for substitute counsel and counsel's request to

28

withdraw from representation.

Additionally, the state courts properly determined that petitioner's request for self-representation was not unequivocal and that allowing him to proceed *pro se* would be detrimental to the proceedings. Petitioner exhibited hostility and disruptive behavior during the trial process and did not possess the requisite skills to mount an adequate defense. Given these circumstances, the trial court acted within its discretion when it ordered petitioner to proceed with the assistance of appointed counsel.

### E.   Mistrial Claim

Petitioner next asserts that the trial court erred when it denied his motion for a mistrial after he assaulted his lawyer in the presence of the jury. A trial court has discretion to grant or deny a motion for a mistrial in the absence of a showing of manifest necessity. *See Arizona v. Washington*, 434 U.S. 497, 506-510 (1978) (mistrial due to deadlocked jury); *Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F.3d 352, 354-355 (6th Cir. 1994). The United States Supreme Court recently confirmed the significant deference due a trial court's decision to grant or deny a mistrial. *See Renico*, 130 S. Ct. at 1863–1864 (reversing grant of habeas relief on claim contesting state trial court's grant of a mistrial due to a deadlocked jury).

In this case, the Michigan Court of Appeals affirmed the trial court's refusal to grant a mistrial because petitioner's own conduct was the basis for the motion. The court explained:

> [D]efendant argues that the trial court erred by denying the motion for mistrial made by his trial counsel after defendant assaulted his attorney in front of the jury. We disagree. A mistrial should be granted only because of an irregularity which is prejudicial to the rights of the defendant and impairs his ability to get a fair trial. *People v. Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). The power to declare a mistrial is to be used with the greatest of caution and only under urgent circumstances and for very plain and obvious reasons. *People v. Siler*, 171 Mich App 246, 256; 429 NW2d 865 (1988). The *Siler* panel further stated:

> Defendant himself created the debacle at his trial. We find that the trial court was correct in denying defense counsel's motions for a mistrial and instructing the jury to disregard defendant's actions. We will not condone or allow a defendant to perpetrate chaos at his own trial and then obtain a mistrial on the basis of prejudice. We hold that the trial court did not abuse its discretion in denying defendant's motions for mistrial. [*Id.* at 256-257.]

> Because defendant's own actions gave rise to the mistrial motion, there was no basis for a mistrial. Error mandating reversal must be that of the trial court, and not error to which the aggrieved party contributed by plan or negligence. *People v. Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999).

*Dawson*, 2005 WL 292201 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The trial court acted within its discretion in denying the mistrial motion as petitioner's own poor conduct formed the basis for the motion. *See, e.g., United States v. Williams*, 428 F. App'x 723, 725 (9th Cir. 2011) (ruling that trial court did not abuse its discretion in denying mistrial motion based upon defendant's own misconduct, which was so severe it required his removal); *United States v. Harris*, 2 F.3d 1452, 1456 (7th Cir. 1993) (affirming trial court's denial of mistrial motion following defendant's outburst because the defendant "should not profit from his outburst"). Thus, habeas relief is not warranted with respect to this claim.

### F.    Prosecutorial Misconduct Claim

Petitioner maintains that the prosecutor engaged in misconduct by making highly inflammatory and improper character arguments. Specifically, he objects to the prosecutor's rebuttal argument that his courtroom outbursts demonstrate that he is a violent and dangerous person.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88

30

(1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see Darden v. Wainright*, 477 U.S. 168 (1996).

The Michigan Court of Appeals denied relief on this claim, finding that the issue was not preserved due to the lack of an objection at trial and that there was no error in the prosecutor's closing arguments because "the prosecutor's remarks about defendant's outburst in court were in direct response to defense counsel's closing argument which attempted to explain defendant's assaultive conduct in a manner favorable to defendant." *Dawson*, 2005 WL 292201 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. When considered in context, the prosecutor's remarks were proper rebuttal to defense counsel's argument that petitioner's courtroom outbursts were justified because he was innocent and frustrated by the prosecution's lying witnesses. Moreover, the prosecution focused the majority of her arguments on the evidence presented at trial and reasonable inferences therefrom. Petitioner has failed to show that the prosecutor erred or, in the alternative, that any perceived error during closing arguments deprived him of a fundamentally fair trial.

### G.  Evidentiary Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred when it allowed a key prosecution witness to testify that petitioner's brothers warned him not to testify at petitioner's trial and that he was subsequently shot and wounded after testifying at the preliminary examination.

31

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69–70); *see Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim, stating in pertinent part:

Defendant also contends that the prosecution impermissibly introduced evidence that threats had been made against a prosecution witness, without establishing that the threats were made at the instigation of defendant. *People v. Salsbury*, 134 Mich 537, 569-570; 96 NW 936 (1903) [such evidence is admissible to show consciousness of guilt, but only if there is evidence that the threat "was made at the instigation of the defendant, or with his consent or approval, or at least with the knowledge or expectation that it had been or would be made;" *see also People v. Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996)]. We disagree.

In the instant case, the witness testified that he was threatened and then shot for testifying against defendant at the preliminary examination by defendant's brothers. While this a close evidentiary question, since the inference that defendant knew of the threats merely because they were made by his brothers is not particularly strong, we find no error because a trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *People v. Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). Even assuming that the evidence of threats against the witness was permitted by the trial court in error, however, this evidentiary error does not merit reversal in a criminal case because it does not affirmatively appear that it is more probable than not that such an error was outcome determinative in light of the other substantial evidence of defendant's guilt. *People v. Smith*, 243 Mich App 657, 680; 625 NW2d 46 (2000).

32

*Dawson*, 2005 WL 292201 at *4.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, to the extent that petitioner asserts that the trial court erred in admitting testimony under the Michigan Rules of Evidence, he merely alleges violations of state law which do not entitle him to federal habeas relief. *See, e.g., Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Additionally, petitioner did not establish that the admission of the disputed testimony violated his federal due process rights. Under federal law, threats are generally considered "verbal acts" not admitted for the truth of the matter asserted and such evidence is admissible under Federal Rule of Evidence 403 unless the potential for unfair prejudice substantially outweighs its probative value. *See United States v. Thomas*, 86 F.3d 647, 653-54 (7th Cir. 1996). Possible threats to a witness are relevant to assess credibility. *See United States v. Pierson*, 121 F.3d 560, 563 (9th Cir. 1997); *see also Burton v. Renico*, 391 F.3d 764, 775 (2004) (admission of witness threats did not violate due process where they were used to explain why witness did not report petitioner's conduct to police); *Sadler v. Jabe,* 96 F.3d 1448, 1996 WL 506375, *1 (6th Cir. 1996) (testimony that defendant's father threatened witness was relevant to witness's credibility and was properly admitted to rehabilitate her when her motive to testify was called into question). When evidence of a threat is necessary to impeach or rehabilitate a witness's credibility, and there is no indication that its use is pretextual, it may be admissible despite its potential for prejudice. *See Gomez v. Ahitow*, 29 F.3d 1128, 1139 (7th Cir. 1994). Since defense counsel challenged Eddie Smith's

33

credibility throughout the trial, the Court properly determined that evidence of intimidation affected his credibility and was admissible.

To the extent that the threatening remarks and eventual shooting of the witness were not attributed to petitioner, it cannot be said that he was so prejudiced by such testimony that the trial was rendered fundamentally unfair. *See Pierson*, 121 F.3d at 563. Inasmuch as such acts could have been attributed to petitioner, they were relevant to establish his consciousness of guilt. *See United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006); *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). Petitioner has not shown that the admission of the evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair. *See, e.g., Cotton v. McKee*, No. 07-10291-BC, 2008 WL 4647691, *5 (E.D. Mich. Oct. 20, 2008) (denying habeas relief on claim that prosecutor improperly solicited evidence that petitioner had threatened to kill a witness because no clearly established Supreme Court law holds that due process is violated by such evidence and evidence is admissible to prove consciousness of guilt). Consequently, habeas relief is denied in regards to petitioner's claim that inadmissible testimony was admitted at trial.

### H.      Non-Production of a Witness and Due Diligence Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecution failed to produce endorsed witness Ava Williams and the trial court erred in finding that the prosecution exercised due diligence in attempting to locate her and secure her appearance at trial.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). For this reason, the prosecution in a criminal trial must make a good faith effort to produce

34

relevant witnesses at trial. *See Barber v. Page*, 390 U.S. 719, 724-725 (1968). The standard for evaluating whether the prosecution has made a good faith effort to produce a witness is one of reasonableness. *Ohio v. Roberts*, 448 U.S. 56, 74 (1990), *overruled on other grounds, Crawford v. Washington*, 541 U.S. 36 (2004). The failure to produce a relevant witness only serves as a basis for habeas corpus relief if, under federal constitutional law, the petitioner is denied a fundamentally fair trial. *See Moreno v. Withrow*, 61 F.3d 904, 1995 WL 428407, *1-2 (6th Cir. 1995) (failure to call *res gestae* witness did not render trial fundamentally unfair and did not constitute prosecutorial misconduct).

> The Michigan Court of Appeals denied relief on this claim, stating:
>
> Defendant next argues that the trial court erred in determining that the prosecutor and police exercised "due diligence" in locating Ava Williams for her testimony at trial. We disagree. A trial court's determination of due diligence is reviewed for an abuse of discretion. *People v. Eccles*, 260 Mich App 379, 388; 676 NW2d 76 (2004), citing *People v. Bean*, 457 Mich 684; 580 NW2d 390 (1998). Under MCL 767.40a(3), the prosecution must provide a definitive list of witnesses it will produce to testify at trial:
>
> > Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecution attorney intends to produce at trial.
>
> A prosecutor is obliged to exercise due diligence to produce at trial those witnesses endorsed pursuant to MCL 767.40a(3). *Eccles, supra* at 388. Due diligence is the attempt to do everything "reasonable, not everything possible," to secure the presence of a witness at trial. *People v. DeMeyers*, 183 Mich App 286, 291; 454 NW2d 202 (1990). The prosecution is "not required to exhaust all avenues for locating [witnesses], but has a duty only to exercise a reasonable, good-faith effort in locating [them]." *People v. Briseno*, 211 Mich App 11, 16; 535 NW2d 559 (1995).
>
> The trial court conducted a due diligence hearing on the second day of trial, during which the prosecution presented evidence that the police unsuccessfully searched for the witness at three separate addresses. The police also attempted to contact the witness by telephone, attempted to contact relatives and associates of the witness, and searched for the witness at the county morgue and jail. Finally, police also

checked the witness' credit history for her contact information. Based on the evidence presented, the trial court concluded that the prosecutor and police exercised due diligence in seeking to find and produce the witness, and we find no abuse of discretion in this ruling.

*Dawson*, 2005 WL 292201 at *3.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner has not shown that the prosecution failed to exercise due diligence to produce Ava Williams and/or that he was denied a fair trial by her non-appearance at trial. First, the record indicates that the police made a reasonable effort to locate Williams by searching for her at several locations, attempting to contact her and her relatives by telephone, and checking her credit reports. Second, even if the state erred in failing to produce Williams, petitioner has not shown that his trial was fundamentally unfair. He has not offered an affidavit from Williams or other evidence to show that her testimony would have benefitted his defense or that he was otherwise prejudiced by the failure to produce her. Conclusory allegations, without evidentiary support, do not provide a basis for federal habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003). Accordingly, petitioner has failed to establish a constitutional violation upon which habeas relief can be granted.

## I.    Ineffective Assistance of Appellate Counsel Claims

Petitioner argues that he is entitled to habeas relief because his appellate counsel was ineffective for failing to raise a judicial misconduct issue and neglecting to file a motion for remand or, in the alternative, an evidentiary hearing on direct appeal.

In order to establish ineffective assistance of appellate counsel, petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.

36

*See Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Judicial scrutiny of counsel's performance is "highly deferential." *Strickland*, 466 U.S. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-752). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and constitutes reversible error. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment (or any judicial misconduct claim) appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented several significant claims on direct appeal, including issues of judicial misconduct, the failure to produce an endorsed witness, prosecutorial misconduct, and the admission of threat evidence. Petitioner has not demonstrated that appellate counsel's strategy in presenting those claims and not raising other claims was deficient or unreasonable.

Petitioner also cannot prevail on his claim that counsel was ineffective for failing to request

a remand or evidentiary hearing on direct appeal (regarding the issue of ineffective assistance of counsel). As an initial matter, the Court finds that it was reasonable for counsel not to file such a motion because counsel did not wish to pursue ineffective assistance of counsel claims on appeal. Moreover, the record indicates that petitioner filed a *pro se* motion to remand with the Michigan Court of Appeals, which was denied. Consequently, petitioner cannot establish that he was prejudiced by counsel's failure to file such a motion. Counsel cannot be deemed ineffective for failing to file a futile motion. *See, e.g., United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Additionally, given the Michigan Court of Appeals' determination and this Court's determination that the underlying claims lack merit, petitioner cannot establish that he was prejudiced by counsel's conduct. Petitioner has also not presented any evidence or otherwise shown that a motion for remand or evidentiary hearing would have been granted if filed by counsel or that any testimony obtained during an evidentiary hearing would have affected the outcome of his appeal. As already noted, conclusory allegations, without evidentiary support, do not provide a basis for habeas relief, *see Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 160 F.3d at 287, or an evidentiary hearing on habeas review. *See Washington*, 455 F.3d at 733.

## J.    Judicial Misconduct Claims

Petitioner contends that the trial court made improper comments at trial. Specifically, he asserts that the trial court erred when it referenced his police statement, noted that certain questions being asked by defense counsel were, in fact, petitioner's questions and discussed whether defense witness Frederick Dixon was known as "Old Boy."

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge that possesses no actual bias against the defendant or an interest in the outcome of

38

the case.  *See Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997).  Judicial misconduct claims

generally fall within two categories.  One category addresses charges of "judicial bias" stemming

from a trial judge's "personal interest" in the outcome of a case. *See In re Murchison*, 349 U.S. 133,

136 (1955).  The other involves charges of "judicial misconduct" where the trial judge is accused

of conducting the proceedings in a manner that exhibits a "deep-seated favoritism or antagonism

that would make fair judgment impossible."  *See Liteky v. United States*, 510 U.S. 540, 555-56

(1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).  Adverse rulings themselves are

not sufficient to establish bias or prejudice.  *See Liteky*, 510 U.S. at 555 ("judicial rulings alone

almost never constitute a valid basis for a bias or partiality motion"); *United States v. Hynes*, 467

F.3d 951, 960 (6th Cir. 2006) (citing *Liteky*).  A constitutional violation occurs only when a judge's

rulings or statements demonstrate "a predisposition so extreme as to display clear inability to render

fair judgment."  *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008).  In reviewing a judicial bias

claim, a federal habeas court should presume that the trial judge properly discharged his or her

official duties.  *See Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

The Michigan Court of Appeals found that petitioner's judicial misconduct claim was

unpreserved and, in any event, petitioner failed to show that the trial court erred.  The court

explained in pertinent part:

> Defendant first argues that the trial court improperly interjected itself into the trial
> by making the following comments to the jury at the beginning of the second day
> of trial:
>
> > And then we ended the day yesterday with Officer Kurtiss Staples
> > who, when we concluded yesterday, read the statement made by the
> > defendant into the record, which was Exhibit 6[,] which had been
> > admitted.
>
> Defendant asserts that the comments by the trial judge undermined the credibility

of defendant and influenced the jury in their determination of whether defendant actually made the statement to police. We disagree.

* * *

It is well established that a trial court has wide, but not unlimited, discretion and power in the matter of trial conduct. *People v. Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995), citing *People v. Collier*, 168 Mich App 687, 697; 425 NW2d 118 (1988). On appeal, portions of the record should not be taken out of context in order to show trial court bias against defendant; rather, the record should be reviewed as a whole. *Id*. "A trial court's conduct pierces the veil of judicial impartiality where its conduct or comments unduly influence the jury and thereby deprive the defendant of a fair and impartial trial." *Id*.

In this case, defendant has taken the trial court's comments out of context, and when these comments are reviewed within the record as a whole, no error has occurred. The trial court plainly instructed the jury in regards to how it should determine the veracity of defendant's alleged statements to police:

> Now, the prosecution has introduced evidence of a statement that it claims the defendant made. Before you may consider such an out of court statement against the defendant, you must find that the defendant actually made the statement as it was given to you. If you find that the defendant did make the statement, you may give the statement whatever weight you think it deserves. [Emphasis added.]

Thus, contrary to defendant's assertion, the trial court never asserted, as fact, that defendant actually made a statement to police, and we find no plain error.

Defendant next argues the trial court improperly interjected itself into the proceedings by pointing out, in the presence of the jury, that certain questions by defense counsel were questions defendant had written out and directed defense counsel to ask. We disagree.

At the conclusion of cross-examination of a prosecution witness, defense counsel informed the court that defendant was insisting that certain questions be posed to the witness. The trial court then allowed the witness to be recalled, and allowed defendant to direct defense counsel to ask certain questions that defendant had written out on paper. However, the trial court was concerned with establishing the propriety of defense counsel's questions:

> All right. I'll let you do it this one time and-but you need to give-before he's done, you need to give whatever questions you want your attorney to ask.
>
> Now, I know there might be some conflict here, one, between

40

>questions that the defendant demands that you ask, Mr. Harris, and
>your exercise of professional judgment as to whether those questions
>ought to be asked and there's tension there. Obviously, however, and
>I want to make it perfectly clear, that the questions you are about
>to-about to ask are questions that the defendant demanded that you
>ask, not questions that you would have asked, at least exercising
>your professional judgment. All right.

Defendant simply asserts that there was "no reasonable need" for the trial court's comments. This conclusory argument fails to establish how the trial court's comments "pierced the veil of judicial impartiality," *Paquette, supra*, at 340, and we find no error in the trial court's comments.

Defendant further contends that when the trial court asked defendant whether the name "Old Boy" was actually that of another defense witness, Frederick Dixon, the trial court committed its "most egregious" error by arousing suspicion in the jury as to defendant's credibility and bolstering Officer Staples' testimony about what defendant confessed to him during interrogation. We disagree.

A defendant is entitled to a "neutral and detached" trial judge. *People v. Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). A trial court is free to question witnesses to clarify testimony or elicit additional relevant information; however, the court must exercise caution and restraint to insure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial. *Id.* "The test is whether the judge's questions and comments may have unjustifiably aroused suspicion in the mind of the jury concerning a witness' credibility and whether partiality quite possibly could have influenced the jury to the detriment of defendant's case." *Id.*

Again, defendant fails to articulate in his brief, how the trial court's questions were improperly "argumentative, prejudicial, unfair, or partial," *Cheeks, supra* at 480, and we find no plain error. Moreover, since defendant's alleged statement to the police contained the only reference in the trial to the names Darnell and Old Boy, the trial court's questions to clarify whether Frederick was referred to by any other names was well within its discretion. MRE 614(b).

*Dawson*, 2005 WL 292201 at *1-2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The trial judge's comments, when viewed in context and the entire record, do not reflect unfair prejudice or "a predisposition so extreme as to display clear inability to render fair judgment." *Johnson*, 544 F.3d at 597.  Rather,

it appears that the trial court was attempting to proceed with the trial in an efficient manner and to

clarify issues for the jury's consideration.  The trial court also cautioned the jury that the court's

comments were not evidence and should not be perceived as favoring or disfavoring either party.

Petitioner is not entitled to habeas relief on this claim because he did not establish that the trial

judge held a personal bias against him, engaged in misconduct, or otherwise deprived him of a

fundamentally fair proceeding.

### K.   Illegal Arrest and Related Ineffective Assistance of Counsel Claim

Petitioner alleges that the arresting police officers gave perjured testimony to establish the

probable cause for his arrest. He also asserts that trial counsel was ineffective for failing to request

discovery and present evidence of the alleged perjured testimony.

Federal courts will not address a Fourth Amendment claim upon habeas review if the

petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of

the claim was not thwarted by any failure of the state's corrective processes.  *Stone v. Powell*, 428

U.S. 465, 494-495 (1976).  A court must perform two distinct inquiries when it determines whether

a petitioner may raise an illegal arrest claim in a habeas petition.  First, the "court must determine

whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth

amendment claim.  Second, the court must determine whether presentation of the claim was in fact

frustrated because of a failure of that mechanism."  *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th

Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a

criminal defendant to raise a Fourth Amendment claim."  *Robinson v. Jackson*, 366 F. Supp. 2d

524, 527 (E.D. Mich. 2005).  This procedural mechanism is a motion to suppress, ordinarily filed

42

before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). As a result, petitioner is entitled to relief only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner has not done so. On direct appeal, the Michigan Court of Appeals found no constitutional violation in affirming petitioner's convictions and the Michigan Supreme Court denied leave to appeal. Petitioner then raised the perjured testimony argument on collateral review. The state trial court denied relief and the appellate courts denied leave to appeal. Upon reviewing the record, it is clear that the Michigan courts were cognizant of petitioner's Fourth Amendment claim and that he received due process. While petitioner challenges the sufficiency of the state courts' review and argues that he should have been given an evidentiary hearing, petitioner has not shown that state procedures were flawed to the extent that he was unable to properly litigate his Fourth Amendment claim. Petitioner's illegal arrest claim is, therefore, not cognizable on federal habeas review.

Petitioner relatedly asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to seek discovery and present evidence of perjured testimony by the police. Petitioner, however, has not shown that counsel erred or that he was prejudiced by counsel's conduct under the *Strickland* standard. *See* discussion *supra*. Petitioner failed to demonstrate that the police illegally stopped his vehicle or that his subsequent arrest was improper. Nor has he presented any evidence that the police committed perjury with respect to such matters. His conclusory allegations of misconduct are insufficient.

L.    **Polygraph Claim**

Petitioner next asserts that the trial court erred when it ordered petitioner to undergo a polygraph examination regarding the voluntariness of his police statements and then, in any event, admitted his statements before the polygraph examination was conducted.

Prior to the trial, defense counsel filed a motion to suppress petitioner's statements to the police and requested a polygraph examination with respect to the voluntariness of those statements. The trial court granted the polygraph request, but held the suppression hearing before the examination was scheduled. The trial court then denied the motion to suppress, and ultimately the polygraph examination was not administered.

The United States Supreme Court has never held that courts are constitutionally required to admit polygraph evidence in a criminal trial or that polygraph evidence is reliable. *See United States v. Scheffer*, 523 U.S. 303, 309 (1998); *United States v. Thomas*, 167 F.3d 299, 308, n. 8 (6th Cir. 1999) (noting that the Supreme Court in *Scheffer* "acknowledged that there is no consensus in the scientific community that polygraph evidence is reliable, and that there is no constitutional right to have polygraph evidence admitted at trials"). The admissibility of polygraph evidence is generally a state law matter which does not raise issues of constitutional magnitude cognizable on habeas review. *See Bolton v. Berghuis*, 164 F. App'x 543, 550 (6th Cir. 2006); *Maldonado v. Wilson*, 416 F.3d 470, 477-478 (6th Cir. 2005) (collecting cases). Notwithstanding petitioner's assertions to the contrary, there is no constitutional right to a polygraph examination. *See Luckett v. Berghuis*, No. 04-CV-73037, 2006 WL 1779383, *2 (E.D. Mich. June 26, 2006) (citing *Scheffer* and ruling that a habeas petitioner had no constitutional right to take a polygraph examination to establish his innocence).

44

In any event, petitioner asserts that, without the polygraph test results, he was denied his constitutional right to present a defense and offer potential exculpatory evidence. Under long-settled Michigan law, however, polygraph examinations are not admissible at trial due to their unreliability. *See, e.g., People v. Ray*, 431 Mich. 260 (1988). Thus, even when a defendant passes a polygraph examination, the results are inadmissible at trial. *See People v. Phillips*, 469 Mich. 390, 397 (2003); *People v. Jones*, 468 Mich. 345, 354 (2003). Since any polygraph examination results would have been deemed inadmissible, petitioner cannot establish that he was denied the right to present a defense by the trial court's actions. Additionally, petitioner failed to establish that the results of a polygraph test would have been favorable or would have altered the trial court's ruling on the suppression motion. Consequently, petitioner is not entitled to habeas relief.

### M.   Involuntary Confession Claim

Petitioner argues that the trial court erred when it admitted his incriminating police statement into evidence because he made them involuntarily.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *See Colorado v. Connelly*, 479 U.S. 157, 163-164 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overcome "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include: (1) police coercion (a "crucial element"),

45

(2) length of interrogation, (3) location of interrogation, (4) continuity of interrogation, (5) suspect's maturity, (6) suspect's education, (7) suspect's physical and mental condition and (8) whether the suspect was advised of his or her *Miranda* rights. *See Withrow v. Williams*, 507 U.S. 680, 693-694 (1993). All of the factors should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Although without evidence of coercive police activity a confession should not be deemed involuntary. *Connelly*, 479 U.S. at 167 ("coercive police activity is a necessary predicate"). A petitioner bears the burden of proving that a statement was involuntary. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987).

On direct appeal, the Michigan Court of Appeals denied relief on this claim as follows:

Finally, defendant argues his statement to police was improperly admitted into evidence because it was involuntarily made in violation of defendant's Fifth Amendment rights. We disagree.

\* \* \*

In determining whether a statement was made voluntarily, the court should consider all the circumstances, including: the duration of the defendant's detention and questioning; the age, education, intelligence and experience of the defendant; whether there was unnecessary delay of arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused. *People v. Sexton*, 458 Mich 43, 66; 580 NW2d 404 (1998).

In this case, Officer Staples testified that defendant voluntarily made a statement after he was advised of his rights and had signed a waiver of rights form. Staples also testified that defendant never requested an attorney, never appeared injured, never requested any medication, never indicated he desired food or water, and was never threatened. Staples further stated that defendant told him he could read and write and that he had gone through the tenth grade in school. Defendant testified that before he was interrogated by Staples, he was well aware of his right to remain silent and his right to counsel being present during questioning, but nevertheless, his statement was not voluntary because he was denied food, water and sleep for three days while he was in custody. Defendant also testified that he was assaulted with a gun, threatened with a knife and denied his right to counsel during the interrogation.

The trial court found that defendant voluntarily signed the waiver of rights form although he was fully aware from previous convictions and interrogations of his

46

right to an attorney, and that accordingly, defendant's statement to police was voluntary. In light of the totality of the circumstances and the deference this Court accords a trial court findings of fact, we conclude that the trial court's decision was not clearly erroneous.

*Dawson*, 2005 WL 292201 at *9-10.

The state appellate court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Although petitioner claimed that police used coercive tactics and deprived him of various necessities during his confinement and interrogation, the police testified otherwise. The trial court accorded more credibility to police statements that petitioner was advised of his constitutional rights, he waived those rights and signed the appropriate form, and he was not threatened or deprived of basic necessities. A state court's credibility determination is presumed correct, *see Miller*, 474 U.S. at 112, and petitioner proffered no evidence to rebut this presumption. Moreover, the record reveals that petitioner was 22 years old at the time of the interrogation, he obtained a tenth grade education level, he was familiar with the criminal justice system and well aware of his rights. Petitioner has failed to establish that his statements to police were coerced or otherwise given involuntarily.

## N.   **Cumulative Error Claim**

Lastly, petitioner asserts that he is entitled to habeas relief because the cumulative effect of the alleged errors that occurred at trial. Petitioner cannot establish that his trial was riddled with cumulative errors because he failed to demonstrate a single underlying constitutional violation. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006). Moreover, the United States Court of Appeals for the Sixth Circuit noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Habeas relief is unwarranted with regard to this claim as well.

47

V.   **Conclusion**

Based on the aforementioned reasons, the Court concludes that petitioner is not entitled to federal habeas relief on the claims contained his petition and the petition must be denied.

A certificate of appealability must issue if a petitioner seeks to appeal a district court's adverse habeas determination. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court addresses the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id*. at 336-337. Having conducted the requisite review, the Court concludes that petitioner failed to make a substantial showing of the denial of a constitutional right with respect to all of his habeas claims. A certificate of appealability is not warranted.

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is denied and dismissed with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

48

S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: October 5, 2012
      Detroit, Michigan